(No. 14001.—Judgment reversed; award set aside.)
FRANK PEARCE, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PETER PETERSON, Defendant in Error.)

*Opinion filed October 22, 1921.*

1. WORKMEN'S COMPENSATION—*general rule as to liability for injury during the lunch hour.* As a general rule, where the lunch period is not subject to the employer's control or restricted in any way and the employee is free to go where he will at that time, an injury to the employee while he is on the public street, off the premises of the employer, does not arise out of the employment.

2. SAME—*when injury to employee while going after lunch does not arise out of employment.* Where employees voluntarily make an arrangement among themselves to cook their lunch and eat it on the premises of the employer without his direction or sanction, an injury to one of the employees, shortly before the noon hour, while he was returning on a public street after getting supplies for the meal, does not arise out of the employment.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

JOHN A. BLOOMINGSTON, for plaintiff in error.

MORRIS KOMPEL, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Peter Peterson filed a claim for compensation, alleging that he received an injury arising out of his employment with plaintiff in error June 12, 1918. His claim was allowed by the arbitrator and on review the arbitrator's finding was approved by the Industrial Commission. The circuit court of Cook county affirmed the finding of the commission, and this writ of error has been sued out to review the proceedings.

Peterson was a janitor and all-round handy man in the Ewart building, at 118 North Jefferson street, Chicago, and

299—11

had been so employed for about a year previous to the occurrence in question. It is agreed by both parties that they were under the Workmen's Compensation act on the day of the injury, but plaintiff in error denies that the said injury arose out of defendant in error's employment. The record shows without contradiction that a special arrangement was made by the defendant in error, the chief engineer of the building and his assistant, whereby, instead of bringing cold lunches, they each contributed to the expense of a warm lunch, and one of the three would go out and purchase groceries, meat and whatever else they wished for lunch and it would be cooked in the building. The testimony of the assistant engineer, Mannik, was to the effect that before he was employed at the Ewart building he had worked in another manufacturing building where a similar arrangement had been made by some of the employees, and that after he came to work in the Ewart building he suggested this plan to the chief engineer, and they talked it over together and also discussed it with the defendant in error, whose employment began about a month after Mannik was hired, and the three decided to follow the plan. Mannik himself did the cooking and Peterson usually was the one to go after the groceries and meat after getting suggestions from the chief engineer or Mannik as to what food should be obtained for that certain day. Sometimes the chief engineer or Mannik went out after the food but usually Peterson was sent. On the day of the injury Peterson, under this arrangement, went to the meat market and other places to obtain supplies for the noon meal and on his way back fell down but is unable to tell what caused the fall. His left leg or hip was seriously injured, and he was taken, at the suggestion of the chief engineer, to the Cook County Hospital, and later, when his recovery was found to be somewhat slow, he was taken to the Oak Forest Hospital, (another county institution,) where he remained for three months.

Defendant in error testified that on the day he was injured the chief engineer, Wall, told him about eleven o'clock to go and get meat and other supplies for dinner, stating that he (Wall) would attend to the elevator while defendant in error was gone. It would appear that the regular elevator man usually took his lunch at 11:30 A. M., and that while he was gone defendant in error ran the elevator. The chief engineer attended to the hiring of his assistant and of defendant in error and had charge of the building and the employees during the most of the time. Plaintiff in error, Pearce, agent of the building, was in general charge of its management but allowed the chief engineer to attend to the details, including the hiring and discharge of most employees. Pearce testified that he did not know of the special arrangement of these men for eating their lunch on the premises or about one going out to buy the food to cook; that the power in the building was shut off from the use of the tenants from 12:00 to 12:30, and that was usually the employees' lunch time. The testimony tends to show that Pearce had seen the three men eating their lunch in the building, but there is no evidence that he had affirmatively acquiesced in their practice in any way.

There can be no question from the record that the injury to defendant in error was a serious one, but it is not clearly shown that the fall was due to what is commonly termed an accident or whether it was due to some physical condition or disease. The chief question in controversy here is whether the defendant in error's fall on the street in returning with material for lunch, under the circumstances shown in this record, arose out of his employment. The evidence shows that prior to the time this special arrangement was made by these three employees, in which they were joined at one time by another employee for a brief period, defendant in error and Mannik brought their lunches to the building and ate them there during the lunch period and that Wall usually went out to some near by restaurant for his lunch. There

appears to have been no definite rule as to how or where the employees in the Ewart building should eat their lunch. Ordinarily, where the lunch period is not subject to the employer's control or restricted in any way and the employee is free to go where he will at that time, if he is injured on the public street, off the premises of the employer, the authorities hold that the injury does not arise out of the employment. *(McKrill v. Howard & Jones,* 2 B. W. C. C. 460; Harper on Workmen's Compensation, (2d ed.) sec. 55; Bradbury on Workmen's Compensation Law, (3d ed.) 526; 1 Honnold on Workmen's Compensation, 361; *Hills* v. *Blair,* 182 Mich. 20; *Draper* v. *University of Michigan,* 195 Mich. 449; *Bylow* v. *St. Regis Paper Co.* 179 App. Div. (N. Y.) 555.) So far as the record shows, the place where defendant in error fell had no relation to nor was any part of the surroundings of his place of work but was a block or more away on a public street.

Counsel for defendant in error argues that the special arrangement as to lunch was made by Wall, the chief engineer, in furtherance of the business of the employer, with a view to economizing in hiring additional help during the lunch hour. We do not think the evidence justifies this conclusion. We think the record shows that the arrangement for lunch was made by the chief engineer and his co-employees mainly for the purpose of furnishing warm lunches for themselves, which would be more enjoyable, and perhaps more healthful, than if cold. The fact that they sent out for the material and chose to eat the meal on the premises is not material, in view of the fact that the injury took place on a public street some distance from the place of employment. We think it is clear from this record that the arrangement for lunch was a special, voluntary one among the employees and without the direction or sanction of the employer, and that the injury did not arise in the scope or area of defendant in error's employment and that therefore the accident did not arise out of the employment. This

being so, it is unnecessary to consider and discuss other questions raised in the briefs.

The judgment of the circuit court will be reversed and the award of the Industrial Commission set aside.

*Judgment reversed and award set aside.*